IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**XIANG LI & TENGFEI WANG**                                                                              **PLAINTIFFS**

**V.**                                                                              **CAUSE NO. 3:20-CV-8-CWR-FKB**

**SHARRON WOOTEN, d/b/a EARTHLY**                                                    **DEFENDANT**
**ANGELS SURROGACY**

**ORDER**

Before the Court is Xiang Li and Tengfei Wang's motion for default judgment as to damages. Docket No. 32. After careful consideration of the motion and relevant authorities, the Court grants in part and denies in part plaintiffs' motion.

**I.      Factual and Procedural History**

Surrogacy allows intended parents to build families by carefully crafted, often complicated and expensive, agreements. It is a modern marvel that opens the doors of parenthood for those who once thought them closed. Plaintiffs are two of those intended parents, a married couple from Tennessee. They contracted with defendant, Sharron Wooten, who operates a business known as Earthly Angels Surrogacy in Mississippi, for the purpose of fulfilling their dreams of becoming parents.

Defendant promised "to use her best efforts" to secure an egg donor, surrogate mother, and fertility clinic to perform egg extraction, embryo transfer, and in vitro fertilization. Within 12-14 months, defendant estimated, plaintiffs would welcome home newborn twins. In exchange, plaintiffs agreed to pay $100,000, which defendant promised to place in an escrow account on their behalf. Plaintiffs then prepared their home and hearts to embrace two new additions.

Wang wrote,

> You know the feeling of craving to have a kid, s/he is [a] sweet, little [angel], banding our family tighter together, our love will become the warmest for him/her. We are going to raise them up, we guide them and give them our best on the way they [are] growing up, we are going to be old and retired, our kids will grow up, get married. In final, when I [have] left this world, our love will still be here with them[.]

Docket No. 1 at 3.

Unfortunately, nearly three years into the contract, plaintiffs had never successfully matched with an egg donor. Rather, defendant offered unsuitable candidates, excuses to delay, and evasions. For example, one potential donor that defendant recommended had clearly stated in her questionnaire that she would not donate to same-sex couples, such as plaintiffs. And while plaintiffs made some progress with two potential surrogates, both relationships were unsuccessful through no fault of plaintiffs. After plaintiffs contracted with one surrogate, defendant forbade the surrogate from performing because of an unrelated personal dispute with the surrogate. Plaintiffs weren't informed until many months later. As to the second surrogate, months into the relationship, plaintiffs learned that defendant failed to conduct any of the requisite medical screenings. Ultimately, this surrogate was disqualified because of several heart conditions.

After nearly three years, plaintiffs demanded that defendant terminate the contract and return their money. This suit followed. On January 26, 2021, this Court granted in part and denied in part plaintiffs' motion for default judgment. Docket No. 31. In it, the Court deferred its judgment as to relief until plaintiffs submitted adequate support. *Id.* On April 21, 2021, plaintiffs submitted the present motion and supplemental briefing.

**II.    Legal Standard**

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *U.S. For Use of M-Co Const., Inc. v. Shipco Gen., Inc.,* 814 F.2d 1011, 1014 (5th Cir. 1987). The plaintiff has "the burden of establishing damages[.]" *Flynn v. People's Choice*

*Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011). If the Court determines, however, that "damages, including fees, cannot be computed with certainty, a district court may grant a motion for default judgment on the issue of liability" and require "additional argument or evidence from the plaintiff" if it deems the same to be necessary. *See Capital One Auto Fin. v. Nabors, Inc.*, No. 4:16-CV-244-DMB-JMV, 2019 WL 1320429, at *4–5 (N.D. Miss. Mar. 22, 2019) (citing cases). "Generally, a district court may only award damages without an evidentiary hearing if 'the amount claimed is a liquidated sum or one capable of mathematical calculation.'" *Yeager v. Brand*, No. 4:17-CV-168-DMB-JMV, 2018 U.S. Dist. LEXIS 167848, at *6 (N.D. Miss. Sep. 28, 2018) (quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

### III. Discussion

Plaintiffs seek (1) rescission of the contract and reimbursement of $79,000 (2) $52,950 in consequential damages; (3) $65,000 in mental and emotional distress damages; (4) $395,850 in punitive damages; (5) $179,141.46 in prejudgment interest; (6) post-judgment interest; and (7) $32,592.25 in attorney's fees and $4.09 in expenses.

#### A. Damages under Successive Claims

Defendant is liable to plaintiffs under breach of contract, fraud, breach of fiduciary duty, conversion, and intentional infliction of emotional distress. While plaintiffs are entitled to relief on each of these claims, they are not entitled to recover on each claim if that would constitute "double recovery." *R.K. v. J.K.*, 946 So. 2d 764, 777 (Miss. 2007). Plaintiffs "cannot recover the same damages twice, even though the recovery is based on two different theories." *Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 725 (5th Cir. 2006)) (quoting *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (5th Cir. 1987)). Thus, plaintiffs can only recover under separate claims to the extent each seeks different damages. After careful consideration of all the claims, damages

3

evidence, and relevant authorities, this Court holds that the relief granted below fully compensates plaintiffs under all theories.

### B. Rescission and Reimbursement

Plaintiffs request recission of the contract and return of the contract price based on defendant's "material false representations in the procurement." Docket No. 26 at 21. Under Mississippi law, "a buyer who has been deceived by material false representations in the procurement of a contract may elect to rescind and to be restored to the position he occupied at the time of sale." *Browder v. Williams*, 765 So. 2d 1281, 1285 (Miss. 2000). And simply put, "[r]escission is an appropriate remedy for fraud." *Id.* at 1284. Such is the case here.

In its *Order for Default Judgment*, this Court found that defendant defrauded plaintiffs of their money via actual fraud, fraudulent misrepresentation, and fraudulent inducement. Docket No. 31. Plaintiffs have established that they paid defendant $79,000 towards the contract price. *See* Docket Nos. 32-3 and 32-4. Accordingly, plaintiffs are entitled to rescission of the contract and reimbursement of that amount.

### C. Consequential Damages

Plaintiffs request consequential damages sufficient to cover the expense of contracting with another surrogacy agency. Damages that result indirectly from a breach are recoverable under Mississippi law to the extent that they were reasonably foreseeable at the time of contracting. *See Wright v. Stevens*, 445 So. 2d 791, 798 (Miss. 1984). Put otherwise, the damages are recoverable so long as they are,

> such as may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.

*Id.* (quoting *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854)).

After a review of the contract, the Court finds that the cost of the service never actually performed was an expected result of defendant's breach. First, the parties agreed on an "all-inclusive" agreement, which was packaged to plaintiffs as a "GUARANTEED program to become parents[]." Docket No. 1-2 at 5. The benefits of this option, though more expensive than other options defendant offered, was that defendant "guarantee[d] a successful outcome" "regardless of the number of tries or the cost to Earthly Angels." *Id.* at 2-3. It is appropriate that defendant keep this promise. By all accounts, the parties explicitly considered what would happen if the process "is not successful the first time," and memorialized their intention that plaintiffs fulfill their "dream of having a child," no matter time or costs. *Id.* at 2-3, 5. It follows that plaintiffs are entitled to continue this pursuit with a more reputable agency, and that doing so was "foreseeable as a probable result" of defendant's breach. *Wright*, 445 So. 2d at 798.

In support of their request, plaintiffs have submitted affidavits from two potential surrogacy agencies. According to these affidavits, the approximate cost of the surrogacy process through another agency is $152,950. Using the formula urged by plaintiffs and applied in *Wright*: the amount paid to defendant ($79,000) + the additional expenditure required to obtain the surrogacy service ($73,950)[1] – the contract price ($100,000), plaintiffs request $52,950. It is granted.

D.  **Mental and Emotional Distress**

Mississippi law allows recovery for emotional distress and mental anguish in breach of contract claims. *See Univ. of Southern Miss. v. Williams*, 891 So. 2d 160, 172-73 (Miss. 2004). Recovery requires a showing that anguish and distress were a foreseeable consequence of the breach, and that anguish and distress actually resulted. *Id.* at 173. Anguish and distress require neither physical manifestation nor expert testimony as proof. *Id.* The "nature of the incident" that

---

[1] $152,950 - $79,000 = $73,950

caused the purported anguish and distress can lessen the specific proof of suffering, where defendant's conduct is more egregious. *Id.*

The traumatic nature of this incident is demonstrated in plaintiffs' affidavits and exhibits attached thereto. Li began seeing a mental health therapist in October 2020 to address the psychological harm caused by defendant's conduct. Docket No. 30 at 5. Wang has suffered too. He cites defendant's "manipulative behavior, deception, lies and misrepresentations" as a source of significant pain and distress. Docket No. 28 at 1. This Court is convinced that the mental anguish and distress described by plaintiffs is real and was a foreseeable consequence of defendant's conduct. Accordingly, plaintiffs are awarded $65,000 in mental anguish and emotional distress damages.

### E. Punitive Damages

Plaintiffs next seek punitive damages in the amount of $395,850, or three times the amount of compensatory damages. Punitive damages, plaintiffs claim, are uniquely important in this case because defendant is accused of almost identical conduct by at least two other couples.[2]

The purpose of punitive damages "is to punish the wrongdoer and deter similar misconduct in the future[.]" Miss. Code Ann. § 11-1-65(1)(e). Defendant committed fraud. Punitive damages are in order for Plaintiff. *See* Miss. Code Ann. § 11-1-65(1)(a) (establishing that an award of punitive damages requires proof by clear and convincing evidence that the defendant acted with "actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.").

---

[2] *See Smeda v. Wooten*, No. 61CO1:19-CV-2089 (Rankin County Court) (filed Sept. 10, 2019) (alleging defendant stole around $30,000 of couple's funds, failed to place funds in escrow, made no progress toward a successful surrogacy, and refused to return the funds); *see also Wood v. Wooten*, No. 25CI1:18-CV-150-WLK (Hinds Circuit Court) (filed Apr. 2, 2018) (alleging defendant took $79,000 with substantially similar allegations).

Still, punitive damages are within the discretion of the court. *Crook Motor Co. v. Goolsby*, 703 F. Supp. 511, 522 (N.D. Miss. 1988). In considering the amount of punitive damages to award, if any, the court must look to the following:

> [The] defendant's financial condition and net worth; the nature and reprehensibility of the defendant's wrongdoing, for example, the impact of the defendant's conduct on the plaintiff, or the relationship of the defendant to the plaintiff; the defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm; the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct; and any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages."

Miss. Code Ann. § 11-1-65(1)(e).

In this case, defendant has not submitted evidence of her financial condition or net worth. In a now stricken Answer, however, defendant claimed to be "nearly bankrupted" by similar suits also led by plaintiffs' counsel. Docket No. 5 at 4. This counsels against a significant punitive damages award.

On the other hand, the existence of additional lawsuits filed by couples personally known to plaintiffs is informative. In those complaints, the allegations are essentially identical, including claims that defendant failed to conduct background checks or medical screening on potential donors and surrogates. *See, e.g.,* Docket No. 30-5 at 8-9. Moreover, the nature of defendant's conduct is especially egregious given the context of surrogacy. Surrogacy is a particularly emotional process, as it centers on the very formation of the family for those couples whose medical or life circumstances prevent them from having children. Intended parents are vulnerable, as the process involves inherent risks and uncertainties. And yet, the many plaintiffs pursuing charges against defendant allege she misrepresented the progress of the surrogacy arrangement, taking the couple's money for years.

While defendant has sought to explain her motives, it is established that she defrauded plaintiffs at the outset of the contract, and materially breached the contract almost immediately by failing to place the money in escrow on behalf of plaintiffs. Instead, she deposited the funds into an unauthorized checking account and has yet to make any substantial performance under the contract in nearly three years or return any funds.

After careful consideration of the relevant factors, this Court holds that punitive damages in the amount of $395,850, or three times the amount of compensatory damages are warranted. Accordingly, they are granted.

### F. Interest

In accordance with Mississippi and Federal law, plaintiffs have requested prejudgment and post-judgment interest. Plaintiffs request prejudgment interest in the amount of $179,141.46 based on a statutory interest rate of 8%, compounded annually from the date of the first material breach of the contract, May 1, 2017. *See* Miss. Code Ann. § 75-17-1(1); *see also Perez v. Bruister*, 54 F. Supp. 3d 629, 680 (S.D. Miss. 2014) (holding that "a prejudgment interest rate of 8% per annum compounded annually has been held appropriate."). This date, plaintiffs claim, is the date the defendant was contractually required to deposit plaintiffs' payment of $40,000 into an escrow account and instead deposited the money into her own personal account for unauthorized use.

This Court finds that prejudgment interest is appropriate to fully compensate plaintiffs. Defendant has not suggested an alternative rate of prejudgment interest, and the Court concludes that 8% is an appropriate rate under Mississippi law. Prejudgment interest will begin May 1, 2017, less the time ascribed to the Court. Specifically, defendant will not be held responsible for a total of 533 days that passed as this Court was considering a series of dispositive motions or awaiting

supplemental material.[3] "Equity requires no less." *TLS Mgmt. & Mktg. Servs. v. Mardis Fin. Servs.*, No. 3:14-CV-881-CWR-LRA, 2018 U.S. Dist. LEXIS 131065, at *29 (S.D. Miss. Aug. 3, 2018). The Court can and will take judicial notice of the calculations necessary for prejudgment interest. Prejudgment interest in the amount of $32,588.18[4] is granted.

Plaintiffs also request post-judgment interest in the amount established by 28 U.S.C. § 1961, which provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." *See also Mid-Gulf Shipping Co. Inc. v. Energy Subsea LLC*, 472 F. Supp. 3d 318, 325 (E.D. La. 2020). Post-judgment interest is awarded as a matter of course. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). "The matter is not discretionary." *Meaux Surface Prot., Inc. v.*

---

[3] Plaintiffs filed a Motion for a More Definite Statement, or in the Alternative, for an Order to File an Amended Answer on February 10, 2020. Docket No. 6. Briefing on that motion was due on March 5, 2020. The Court issued its ruling on May 14, 2020. Docket No. 12. Given this period, 70 days will not be used to calculate prejudgment interest.

Plaintiffs filed a Motion for Entry of Default on June 25, 2020. Docket No. 17. Briefing on that motion was due on July 20, 2020. The Court issued its ruling on November 24, 2020. Docket No. 24. Given this period, 127 days will not be used to calculate prejudgment interest.

Plaintiffs filed a Motion for Default Judgment on December 8, 2020. Docket No. 25. Briefing on that motion was due on January 4, 2021. The Court issued its ruling on January 26, 2021. Docket No. 31. Given this period, 22 days will not be used to calculate prejudgment interest. In that Order, the Court deferred ruling on damages until sufficient information from plaintiffs was submitted. The Court received the supplemental briefing on that issue on April 21, 2021. Docket No. 32. Giving plaintiffs 21 days from the Courts' deferral, the deduction will begin on February 16, 2021. The Court did not issue its ruling until today. Given this period, 314 days will not be used to calculate prejudgment interest.

[4] The Court used a common formula for calculating the prejudgment interest award. That formula, based on that within Robert J. Sergesketter, *Interesting Inequities: Bringing Symmetry and Certainty to Prejudgment Interest Law in Texas*, 32 Hous. L. Rev. 231, 270 n.145 (1995), is: Principal Amount x (1 + Interest Rate)^(Number of Compounding Periods) - 1 = Prejudgment Interest Award. Applied here, that formula results in the following equation: $117,950.00 x ((1 + .08)^((1690-533)/365) -1) = $32,588.1836014

*Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). Accordingly, plaintiffs are entitled to post-judgment interest in accordance with 28 U.S.C. § 1961.

### G. Attorney's Fees

Finally, plaintiffs request $32,592.25 in attorney's fees and $4.09 in expenses. This Circuit employs a two-step process to decide the reasonableness of attorney's fees. First, the court must calculate a "lodestar" by multiplying the reasonable hourly rates for the participating attorneys by the reasonable number of hours expended on the case. Then the court may adjust the lodestar considering 12 factors commonly known as the *Johnson* factors. *Lighthouse Rescue Mission, Inc. v. City of Hattiesburg, Miss.*, No. 2:12-CV-184, 2014 WL 4402229, at *3 (S.D. Miss. Sept. 5, 2014).

The first question is whether the attorney's hourly rate is reasonable given the attorney's ability, competence, experience, and skill. Typically, this is a localized inquiry requiring affidavits from comparable attorneys in the community. *See, e.g., Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) ("Appellants submitted affidavits of their attorneys' billing rates, as well as affidavits from other attorneys in the community showing customary market rates in the area."). This motion for attorney's fees, however, is not contested, and as a result, it is not necessary to scrutinize whether counsel's rate of $290/hour is customary within the community. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (approving request for $300 hourly rate where it was not challenged by the opposing party, but declining to rule on whether the rate would be reasonable in other cases in the area); *M. B. by and through Bedi v. Rankin County*, No. 3:13-CV-241-CWR-FKB, 2016 WL 1077833, at *2 (S.D. Miss. Mar. 17, 2016) (holding "[s]ince there is no objection . . . the Court accepts these rates as the appropriate reasonable rate[s].").

Counsel has submitted itemized invoices including time entries and descriptions to support his claim for hours expended. In his affidavit, he declares that 130.3 hours were expended on this case from July 2019 until August 2020 for a total of $32,592.25. After a careful review of counsel's supporting materials, the Court notes a few discrepancies. First, counsel's affidavit specifies a rate of $290 for 130.3 hours, which totals $37,787—not the requested $32,592.25. Second, the invoices show a total of 107.5—not 130.3 hours. Nevertheless, because counsel has only requested fees up until August 2020, about 15 months ago—despite submitting a successful motion for default judgment in December 2020 and the instant motion for default judgment on damages in April 2021—the Court finds that the request for 130.3 hours is reasonable save the deduction discussed below.

Counsel exercised billing judgment by writing off some of his own time, as well as that of one paralegal. *See Gahagan v. United States Customs & Border Prot.*, No. 14-2619, 2016 U.S. Dist. LEXIS 72030, at *46 (E.D. La. June 1, 2016) (holding that the movant has "the burden of showing the reasonableness of the hours billed and, therefore, is also charged with proving that he exercised billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant.") (cleaned up). There is no indication, however, that charges for Ms. Miller, presumably a paralegal given the more modest rate of $190/hour and descriptions of clerical tasks, were written off. This Court finds that the 1.2 hours charged by Ms. Miller should be billed at a paralegal's rate of $125/hour rather than $190/hour. *See McWilliams v. Advanced Recovery Sys.*, Inc., No. 3:15-CV-70-CWR-LRA, 2017 U.S. Dist. LEXIS 92945, at *10 (S.D. Miss. 2017).

After a review of counsel's supporting materials, this Court finds the requested fees and hourly rates are reasonable and customary in the community and were reached after the exercise

11

of appropriate billing judgment. The lodestar is $290/hour multiplied by 129.1 hours for a total of $37,439.00. Plus $190/hour multiplied by 1.2 hours for $228 and $4.09 in expenses for a grand total of $37,671.09.

Next, the Court must consider whether the *Johnson* factors counsel an upward or downward adjustment. They are:

> the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

488 F.2d at 717-719.

"The United States Supreme Court has stated that many of the Johnson 'factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568-HSO-RHW, 2011 WL 6699447, at *3 (S.D. Miss. Dec. 21, 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9 (1983)). And "trials courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

In this case, each of the *Johnson* factors except the fourth, tenth, and twelfth have been considered in the lodestar analysis. The remaining factors are not relevant to this case. In weighing all of these factors, the Court finds that the lodestar should remain as-is.

## IV.  Conclusion

For the reasons stated above, the Court grants in part and denies in part Plaintiffs' Motion for Default Judgment as to Damages in the amount of $663,059.27.[5] A separate final judgment shall follow.

**SO ORDERED**, this the 27th day of December, 2021.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[5] (1) Reimbursement of $79,000 (2) $52,950 in consequential damages; (3) $65,000 in mental and emotional distress damages; (4) $395,850 in punitive damages; (5) $32,588.18 in prejudgment interest; (6) post-judgment interest; and (7) $37,671.09 in attorney's fees and expenses.